UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Benjamin Wey and NYG Capital, LLC,

Plaintiffs,

-against-

NASDAQ, INC, THE NASDAQ STOCK
MARKET LLC, ADENA FRIEDMAN,
ROBERT GREIFELD, MICHAEL
SPLINTER, NELSON GRIGGS, EDWARD
KNIGHT, ARNOLD GOLUB, WILLIAM
SLATTERY, MICHAEL EMEN, ALAN
ROWLAND, KEELY MOXLEY, ROBERT
McCOOEY JR, and ANDREW HALL,

Defendants.

No. 1:18-cv-03405-JFK

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

**LUPKIN PLLC**
80 Broad Street, Suite 1301
New York, New York  10004
(646) 367-2771
(646) 219-4870 (fax)

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 3

PROCEDURAL POSTURE .......................................................................................................... 6

ARGUMENT................................................................................................................................. 6

I.       Applicable Legal Standard ................................................................................................ 6

II.      Defendants Have Not Met Their Burden of Showing that Federal Jurisdiction Is Proper .. 8

   A.     The Complaint Does Not Necessarily Raise Federal Issues ........................................... 10

      1.     The Complaint Does Not Require Interpretation or Application of NASDAQ Rules 11

      2.     The Complaint Does Not Require Interpretation or Application of SEC Regulations 13

      3.     The Complaint Does Not Require Scrutiny of NASDAQ's Listing/Delisting
          Procedures ..................................................................................................................... 14

   B.     The Complaint Does Not Raise Disputed Issues of Federal Law ................................... 14

   C.     The Complaint Does Not Raise Federal Issues that Are Substantial .............................. 15

   D.     Preventing the State Court from Hearing Mr. Wey's Claims Would Disrupt the Federal-
       State Balance ................................................................................................................... 18

CONCLUSION ........................................................................................................................... 20

## TABLE OF AUTHORITIES

Cases

*Anghel v. Ruskin Moscou Faltischek*, P.C.,

    598 F. App'x 805 (2d Cir. 2015).................................................................................................12

*Broder v. Cablevision Sys. Corp.*,

    418 F.3d 187 (2d Cir. 2005)................................................................................................12, 15

*Christianson v. Colt Industries Operating Corp.*,

    486 U.S. 800 (1988) ..................................................................................................................12

*Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*,

    557 F. App'x 87 (2d Cir. 2014)................................................................................................10

*D'Alessio v. New York Stock Exch., Inc.*,

    258 F.3d 93 (2d Cir. 2001).........................................................................................................7

*Doscher v. Sea Port Group Securities*, LLC,

    832 F.3d 372 (2d Cir. 2016).................................................................................................9, 13

*Empire Healthchoice Assur., Inc. v. McVeigh*,

    547 U.S. 677 (2006) ..............................................................................................................1, 10

*Fracasse v. People's United Bank*,

    747 F.3d 141 (2d Cir. 2014).....................................................................................................15

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,

    463 U.S. 1 (1983) .......................................................................................................................7

*Gilmore v. Weatherford*,

    694 F.3d 1160 (10th Cir. 2012)................................................................................................10

*Glazer Capital Mgmt., LP v. Elec. Clearing House, Inc.,*

   672 F. Supp. 2d 371 (S.D.N.Y. 2009) ......................................................................................11

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,*

   545 U.S. 308 (2005) ...................................................................................................passim

*Gunn v. Minton,*

   568 U.S. 251 (2013) ...................................................................................................passim

*In re Facebook, Inc., IPO Securities and Derivative Litigation,*

   922 F.Supp.2d 475 (S.D.N.Y. 2013) .......................................................................................15

*In re Standard & Poor's Rating Agency Litig.,* No.13–MD–2446 (JMF),

   2014 WL 2481906 (S.D.N.Y. June 3, 2014)............................................................................10

*Kokkonen v. Guardian Life Ins. Co. of America,*

   511 U.S. 375 (1994)..............................................................................................................7

*Lupo v. Human Affairs Int'l, Inc.,*

   28 F.3d 269 (2d Cir. 1994).....................................................................................................6

*Matsushita Elec. Indus. Co., Ltd. v. Epstein,*

   516 U.S. 367 (1996) .........................................................................................................9, 19

*MDS (Canada) Inc. v. Rad Source Techs., Inc.,*

   720 F.3d 833 (11th Cir. 2013)..............................................................................................15

*Merrell Dow Pharm. Inc. v. Thompson,*

   478 U.S. 804 (1986) ...................................................................................................passim

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning,*

   136 S. Ct. 1562 (2016)................................................................................................passim

*Montefiore Med. Ctr. v. Teamsters Local 272,*

    642 F.3d 321 (2d Cir. 2011) .......................................................................................................7

*NASDAQ OMX Group, Inc. v UBS Securities, LLC,*

    *770* F.3d 1010 (2d Cir. 2014)...........................................................................................9, 13, 15

*PCVST Mezzco 4, LLC v. Wachovia Bank Commercial Mortg. Tr. 2007-C30,*

    No. 14-CV-6023 AJN, 2015 WL 153048 (S.D.N.Y. Jan. 12, 2015)..........................................10

*Toussie v. Smithtown Bancorp, Inc.,*

    No. 10-CV-2179 SLT RER, 2011 WL 1155597 (E.D.N.Y. Feb. 7, 2011) ...................................9

*Veneruso v. Mount Vernon Neighborhood Health Ctr.,*

    933 F. Supp. 2d 613 (S.D.N.Y. 2013) ......................................................................................10

*Vera v. Saks Co.,*

    335 F.3d 109 (2d Cir. 2003).......................................................................................................6

*Wolfson v Ernst,*

    112 F. Supp. 3d 167 (S.D.N.Y. 2015) ......................................................................................17

Statutes

15 U.S.C. § 78 ................................................................................................................passim

28 U.S.C. § 1331 ............................................................................................................passim

28 U.S.C. § 1441 ...................................................................................................................6

Regulations

17 C.F.R. § 240.19b-4.............................................................................................................13

iv

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum of law in support of its motion to remand to New York State Supreme Court.

Defendants lied to law enforcement authorities, and those lies led to the wrongful prosecution of Plaintiff Benjamin Wey by the United States Attorney's Office for the Southern District of New York and the Securities and Exchange Commission.  Both the criminal prosecution and SEC enforcement action premised upon these lies were dismissed, but Defendants' conduct caused Plaintiffs to suffer damages in excess of $200 million. This is the essence of Plaintiffs' complaint and the basis of its three state-law causes of action.

To be sure, the complaint contains many allegations that reference federal agencies, employees, and regulations. One defendant is a self-regulatory organization (SRO) subject to federal oversight, the others are affiliated with the SRO and the lies at issue were made to federal law enforcement agents. It is also true that Defendants' lies concerned, in part, the supposed existence of a prohibition that—had it existed—would have been subject to oversight by the SEC. But none of this brings the current action within the "special and small category" of state-law claims that must be removed from the jurisdiction of state courts because they necessarily turn on substantial, disputed questions of federal law. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

Although Plaintiffs brought this action in New York State Supreme Court, Defendants nevertheless saw fit to remove it to the Southern District of New York.  They argue that this matter may only be heard by a federal court because it "alleges violations of rules promulgated under the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78 *et seq.*, and seeks relief based on Defendants' duty, arising under the Exchange Act, to comply with those rules, the

1

Exchange Act itself, and the Exchange Act's implementing regulations." (Notice of Removal ("NOR") ¶ 5).[1]

But that is not what the complaint alleges. Plaintiffs do not allege any violation of the Exchange Act or any rule or regulation promulgated thereunder. Rather, Plaintiffs allege that Defendants violated their common-law duty to refrain from making materially false statements to law enforcement officials and importuning those officials to pursue criminal charges against Plaintiffs. The claims do not require the interpretation or application of federal law. They turn instead on Defendants' multi-faceted deception of law enforcement authorities: Defendants' lies about Mr. Wey masterminding a scheme to defraud NASDAQ; Defendants' lies about Mr. Wey violating a NASDAQ rule that *does not exist*; and Defendants' lies about Mr. Wey disguising the ownership of shares in companies. These lies—and not any violation of federal law—form the basis of Plaintiffs' tort claims.

Plaintiffs' claims for malicious prosecution, tortious interference with prospective economic advantage, and tortious interference with contract arise exclusively under the common law of the State of New York—the only law the court will be called upon to interpret and apply – and there is no diversity of citizenship. Therefore, these claims do not belong in federal court, and this case should be remanded to the State Supreme Court at 60 Centre Street.

---

[1] The Notice of Removal and related petition is attached as Exhibit 2 to the Declaration of Jonathan D. Lupkin, executed on June 15, 2018 (the "JDL Decl.").

## STATEMENT OF FACTS[2]

Plaintiff Benjamin Wey is a Chinese-American businessman who, in 2001, established a firm in New York City that assisted Chinese investors with high quality, profitable investment and financing opportunities in the international capital markets. (¶¶ 22-23).[3] Plaintiff NYG Capital, LLC is the firm Mr. Wey established. (¶¶ 23, 24). For convenience, Plaintiffs are referred to collectively herein as "Mr. Wey".

Defendant NASDAQ, Inc. is a publicly held, for-profit financial services corporation that owns and operates The NASDAQ Stock Market LLC, headquartered in New York. (¶ 25). Across its global exchanges, NASDAQ, Inc. lists more than 3,700 companies in 35 countries, representing more than $10 trillion in total market value. *Id.* As of March 2018, NASDAQ, Inc. was trading at approximately $83 per share, with a market capitalization of $14 billion. (¶ 28). The individual defendants are all NASDAQ, Inc. or The NASDAQ Stock Market LLC employees and executives. (¶¶ 29-40). The Defendants are referred to collectively herein as "NASDAQ".

In the aftermath of the great recession, listings on NASDAQ, like those on other U.S. stock markets, declined significantly, and NASDAQ's profitability suffered. (¶¶ 2, 3). NASDAQ executives needed a new source of listings and identified China as a potentially lucrative market. (¶ 4). But to recruit Chinese companies, NASDAQ needed to bridge the U.S.-Chinese cultural

---

[2] The full story of NASDAQ's persecution of Mr. Wey is told in the complaint. For the sake of brevity, this motion refers only to the facts directly pertinent to this motion. That said, a review of the allegations in the complaint demonstrates the need for remand as clearly as any argument contained herein.

[3] Unless otherwise stated, paragraph references are to Plaintiffs' Complaint. Plaintiffs' Complaint is attached as Exhibit 1 to the JDL Decl.

divide. *Id.* Mr. Wey helped NASDAQ to do that. (¶ 5). In part as a result of Mr. Wey's efforts,

NASDAQ secured 33 new listings of China-based companies in 2009 alone. *Id.*

NASDAQ's profitable relationship with Mr. Wey unraveled in 2010, when the SEC

launched a fraud investigation into the listing of several Chinese companies. (¶ 6). The SEC's

investigation revealed that NASDAQ had not fully vetted the companies before listing them,

leaving the investing public disillusioned and angry. (¶ 7).

The unflattering public and regulatory scrutiny caused NASDAQ to panic. (¶¶ 7, 8, 9). Its

chosen solution was to deflect blame and demonstrate that NASDAQ had "cleaned house" and

excised the Chinese malignancy. (¶ 9). NASDAQ decided to make Mr. Wey the scapegoat

personification of the public relations crisis caused by the SEC's investigation. *Id.*

Mr. Wey was a perfect target.  In August 2010, Barron's published an article entitled

"*Beware This Chinese Import*", which lamented that billions of dollars in losses by Chinese

companies were being shouldered by American investors. (¶ 80).  These investors, according to

the article, believed mistakenly that they were buying a piece of China's prosperity through

purchasing shares of NASDAQ-listed Chinese companies. *Id.* The article took aim at Mr. Wey,

whom it described as "one of the most controversial promoters of Chinese takeovers" (although

it never accused Mr. Wey or his clients of violating any law or regulation). (¶ 81).

But NASDAQ was not content with simply pointing a finger at Mr. Wey.  Instead,

NASDAQ set out to ruin him.  It went to federal law enforcement officials, including the FBI,

the United States Attorney's Office for the Southern District of New York, and the SEC, and told

a series of lies about Mr. Wey's involvement in the listing of Chinese companies. *See* ¶¶ 100,

101, 134, 149, 161. Defendants' lies included the following:

     i.     that Mr. Wey devised a scheme to defraud NASDAQ through gifting shares to
             various people, including friends, employees, and business associates, and to

create, for his Chinese clients, the appearance of a *bona fide* shareholder base that satisfied NASDAQ's "300 Round Lot Rule";[4]

ii.   that Mr. Wey, assisted by others, fraudulently maintained NASDAQ listings by artificially inflating the shareholder base of his Chinese clients through these "stock giveaways," creating the illusion that these companies possessed the required shareholder base to satisfy the 300 Round Lot Rule;

iii.   that Mr. Wey caused misleading statements to be made regarding the gifting of shares; and

iv.   that Mr. Wey caused previously gifted shares to be deposited into brokerage accounts (colloquially called "putting shares in street name") for the purposes of disguising the beneficial owners of gifted shares.

All of these statements were knowingly false. The no-gifting rule *did not exist*. (¶¶ 102-104), Mr. Wey never misled NASDAQ about the gifting of shares. (¶ 105), and Mr. Wey certainly never participated in—let alone orchestrated—a scheme to defraud NASDAQ.

Relying on NASDAQ's false statements, FBI agents swore out a search warrant for Mr. Wey's home and office. (¶¶ 106-115). Thereafter, Mr. Wey was indicted, and the SEC brought civil enforcement charges premised on Mr. Wey's supposed violation of a rule that never existed, and deceitful behavior that never occurred. (¶¶ 116-118). Ultimately, the government voluntarily dismissed the indictment and the SEC charges against Mr. Wey, but not before those proceedings destroyed Mr. Wey's once-flourishing business. (¶¶ 124-131).

---

[4] NASDAQ listing rule 5505(a)(3), known as the "300 Round Lot Rule", requires a listed company to have no fewer than 300 shareholders holding a minimum of a "round lot"—a stock position of 100 or more shares (¶ 11).

## PROCEDURAL POSTURE

On April 9, 2018, Mr. Wey commenced this lawsuit in the Supreme Court of the State of New York, seeking recompense for the damage caused by NASDAQ's deceitful conduct. The action alleges three state-law causes of action: (1) malicious prosecution (¶¶ 132-141), (2) tortious interference with prospective economic advantage (¶¶ 142-156), and (3) tortious interference with contract. (¶¶ 157-167). The central issue in each of these causes of action is whether NASDAQ made false and misleading statements to federal law enforcement officials. *See, e.g.*, ¶¶ 134, 149, 161. All three causes of action arise under the common law of New York State.

On April 18, 2018, Defendants filed the Notice of Removal, divesting the state court of jurisdiction and arguing that this Court has original and exclusive jurisdiction because the complaint supposedly alleges violations of NASDAQ Rule 5505(a)(3) and Rule 19b-4 of the Exchange Act. Mr. Wey does not allege that Defendants violated the Exchange Act, any regulation promulgated under the Exchange Act, or any NASDAQ rule. In short, Mr. Wey need not prove violation of any federal rule or regulation to prevail on his claims, and remand is appropriate.

## ARGUMENT

### I.    Applicable Legal Standard

Removability of civil actions brought in state courts is governed by 28 U.S.C. § 1441, which permits a defendant to "remove an action originally filed in state court to federal court if the case originally could have been filed in federal court.'" *Vera v. Saks Co.*, 335 F.3d 109, 113 (2d Cir. 2003). In considering a motion to remand, the removal statutes are strictly construed, and any doubts are resolved in favor of remand. *See, e.g.*, *Lupo v. Human Affairs Int'l, Inc.*, 28

F.3d 269, 274 (2d Cir. 1994). The "party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011).

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). One such jurisdiction-conferring statute—28 U.S.C. § 1331—provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. Statutory "arising under" jurisdiction "is invoked by and large by plaintiffs pleading a cause of action created by federal law." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005).

"The determination of whether a claim 'arises under' federal law—or, as in the present case, whether removal jurisdiction exist[s]—is 'determined by reference to the well-pleaded complaint.'" *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 100 (2d Cir. 2001) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). "Federal jurisdiction must be found from what necessarily appears in the plaintiff's statement of his own claim unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Id.* (internal quotation marks and alterations omitted). In "extremely rare" cases, federal removal jurisdiction may exist even though the complaint asserts exclusively state-law causes of action. *Gunn*, 568 U.S. at 257-58. However, these circumstances apply only where "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983).

"[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. Rather, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313-14). Such cases are "only extremely rare exceptions" to the general rule that a suit arises under the law that creates the cause of action, and accordingly they cannot justify federal jurisdiction unless *all four* elements are established. *Id.* at 257.

## II.    Defendants Have Not Met Their Burden of Showing that Federal Jurisdiction Is Proper

Defendants allege this Court has "original and exclusive federal-question jurisdiction [over this action] under the provisions of 28 U.S.C. § 1331 and 15 U.S.C. § 78aa because the action alleges violations of rules promulgated under the [Exchange Act] and seeks relief based on Defendants' duty, arising under the Exchange Act, to comply with those rules, the Exchange Act itself, and the Exchange Act's implementing regulations." (NOR ¶ 5).

This is wrong both legally and factually. As a factual matter, Mr. Wey does not allege as part of his claims that any Defendant violated the Exchange Act, or any rules or regulations implemented thereunder. As a legal matter, even if Mr. Wey were seeking to enforce a right or duty under the Exchange Act, the Supreme Court has explicitly held that this, without more, is not enough to confer exclusive federal jurisdiction.

In *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016), the Supreme Court rejected Merrill Lynch's argument that a federal court has exclusive jurisdiction whenever a plaintiff's complaint either explicitly or implicitly asserts that the defendant breached an Exchange Act duty. *Id.* at 1568-69. Noting other considerations, such as whether the plaintiff

seeks relief only under state law or whether the plaintiff can prevail "without proving that the alleged breach of an Exchange Act duty . . . actually occurred," the Court held that the Exchange Act does not confer federal jurisdiction on "any complaint that happens to mention a duty established by the Exchange Act." *Id.* at 1568. In so holding, the Court referred back to its decision in *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 381 (1996), in which the Court rejected the position "that § 27 [of the Exchange Act] precludes a state court from adjudicating any case, even if brought under state law, in which the plaintiff asserts an Exchange Act breach." *Manning,* 136 S. Ct. at 1573.

Thus, section 1331 does not, as Defendants would have it, confer federal-question jurisdiction over every state-law claim against SROs or, indeed, against other entities subject to federal regulatory oversight. *See, e.g., Toussie v. Smithtown Bancorp, Inc.*, No. 10-CV-2179 SLT RER, 2011 WL 1155597, at *4 (E.D.N.Y. Feb. 7, 2011), *report and recommendation adopted,* No. 10-CV-2179 SLT RER, 2011 WL 1155535 (E.D.N.Y. Mar. 28, 2011) ("[T]he fact that a bank's activities are subject to federal regulation does not, in and of itself, give rise to a federal issue."). Rather, each complaint must be analyzed separately under the exacting four-part *Grable-Gunn* test. *See, e.g., Doscher v. Sea Port Group Securities*, LLC, 832 F.3d 372 (2d Cir. 2016) (analyzing allegations against FINRA and finding no federal-question jurisdiction); *NASDAQ OMX Group, Inc. v UBS Securities, LLC,* 770 F.3d 1010 (2d Cir. 2014) (analyzing allegations against NASDAQ and finding federal-question jurisdiction).

As discussed below, Defendants have not shown—and cannot show—that the complaint satisfies any of the four factors laid out under the *Grable-Gunn* doctrine.

### A.     The Complaint Does Not Necessarily Raise Federal Issues

The first of the four *Grable-Gunn* factors asks whether a federal issue is "necessarily raised" by the plaintiff's complaint. *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313-14). "In determining 'whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim.'" *PCVST Mezzco 4, LLC v. Wachovia Bank Commercial Mortg. Tr. 2007-C30*, No. 14-CV-6023 AJN, 2015 WL 153048, at *4 (S.D.N.Y. Jan. 12, 2015) (quoting *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012)).[5]

The allegations upon which Defendants rely as the basis of removal are not *essential* elements of Mr. Wey's claims. To the extent they appear in the complaint at all, these allegations relate to undisputed *facts* that do not require the interpretation or application of *any* law, much less federal law. Where state-law claims raise *factual* issues about federal law—but do not actually require a court to interpret or apply federal law—courts routinely hold that such claims do not raise a federal question.[6]

---

[5] *See also, e.g.*, *Empire Healthchoice*, 547 U.S. at 700 (noting that in *Grable* the federal question was "dispositive of the case"); *In re Standard & Poor's Rating Agency Litig.*, No.13–MD–2446 (JMF), 2014 WL 2481906, at *14 (S.D.N.Y. June 3, 2014) (rejecting jurisdiction where there was "no basis to conclude that" Defendant's "non-compliance with federal law ... [w]as an 'essential element' of [plaintiff s] affirmative case").

[6] *See, e.g.*, *Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 F. App'x 87, 90 (2d Cir. 2014) (declining to find federal question jurisdiction where the issue was "a fact-specific application of the regulations to [the plaintiff] that d[id] not implicate the validity of the regulations themselves, or have any other broader effect on federal interests."); *In re Standard & Poor's Rating Agency Litig.*, No.23 F. Supp. 3d 378, 395 (S.D.N.Y. 2014) ("[I]f a claim does not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous ... cases,' but rather is 'fact-bound and situation specific,' federal-question jurisdiction will generally be inappropriate." (quoting *Empire Healthchoice*, 547 U.S. at 700-01); *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 623 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 604 (2d Cir. 2014) (finding no federal-question jurisdiction where claim "presents nothing more than a classic fact dispute. Indeed, it presents no question of law

1.     **The Complaint Does Not Require Interpretation or Application of NASDAQ Rules**

Defendants contend the complaint is based on allegations that "Defendants misinterpreted and violated The NASDAQ Stock Market's listing rules – specifically, the "300 Round Lot Rule." (NOR ¶ 7). The complaint contains no such allegations. Mr. Wey does not allege that Defendants "misinterpreted" any rule. Instead, he alleges that Defendants deliberately misled the SEC and other law enforcement authorities by falsely leading them to believe, *inter alia*, that Mr. Wey orchestrated a scheme to inflate the number of shareholders of various listed companies through deceptive acts and by asserting the *existence* of a prohibition on the gifting of shares not codified in Rule 5505 or anywhere else. (¶¶ 100-101, 105, 107-109, 134, 149, 161). And Mr. Wey also does not allege that Defendants *violated* Rule 5505(a)(3)—indeed, they could not have violated that rule, which applies to listed companies, not to NASDAQ.

Defendants assert that, "to prevail on *any* of their claims, Plaintiffs must demonstrate that Defendants' interpretations of and statements regarding the 300 Round Lot Rule were erroneous." (NOR ¶ 10). Not so. The complaint describes several types of lies made by Defendants to the authorities, only one of which is his violation of the 300 Round Lot Rule. Consequently, Mr. Wey does not *need* to show that Defendants' statements about the rule were erroneous. Mr. Wey can prevail on all of his claims by proving only that Defendants made the *other* false statements alleged in the complaint. (¶¶ 134, 149, 161). These other false statements provide an alternative basis for liability that manifestly does not require the application or

---

whatsoever: no interpretation of the meaning, scope, or applicability of § 501(c)(3), let alone any Medicaid statutory provision or regulation would be necessary"); *Glazer Capital Mgmt., LP v. Elec. Clearing House, Inc.*, 672 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (finding no federal-question jurisdiction under *Grable-Gunn* doctrine where "[n]o construction or interpretation of federal law is required").

interpretation of federal law. "[A] claim supported by alternative theories in the complaint may

not form the basis for [federal-question jurisdiction]." *Christianson v. Colt Industries Operating

Corp.*, 486 U.S. 800, 810 (1988) ("The patent-law issue, while arguably necessary to at least one

theory under each claim, is not necessary to the overall success of either claim." *Id.* at 801); *see

also Anghel v. Ruskin Moscou Faltischek*, P.C., 598 F. App'x 805, 807 (2d Cir. 2015) (finding

that no federal-question jurisdiction was necessarily raised "[w]here a federal issue [wa]s present

as only one of multiple theories that could support a particular claim . . . " (quoting *Broder v.

Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005)).

Moreover, to show that Defendants' *statements* regarding the 300 Round Lot Rule—that

is, their representations to law enforcement officials that Mr. Wey knowingly concealed his

violation of a non-existent "no-gifting" rule to feign compliance with the 300 Round Lot Rule—

were false, Mr. Wey will prove a *fact* Defendants already have conceded: that the "no-gifting"

rule did not exist. (¶ 102). Mr. Wey does not allege, nor need he prove, that Defendants

"interpreted" the 300 Round Lot Rule or any other NASDAQ rule.

Defendants also argue that Mr. Wey's allegation that they lied about the 300 Round Lot

Rule "necessarily raises a federal question because all exchange rules, including the 300 Round

Lot Rule, must be submitted to the SEC, and the rules become effective under the Exchange

Act's procedures." (NOR ¶ 10). This is a *non-sequitur*. Mr. Wey does not allege that the 300

Round Lot Rule was in some way defective; rather, he alleges that the "no-gifting" rule did not

exist and that the statements made to law enforcement about his actions and activities themselves

were false.

Finally, Defendants contend that the complaint necessarily raises federal issues because

"[e]xchanges are bound to comply with their 'own rules' under 15 U.S.C. § 78s(g)(1), and are

12

subject to sanctions by the SEC for failure to comply with those rules." *Id.* But, again, Mr. Wey does not allege that NASDAQ failed to comply with its own rules—or any rule or regulation promulgated under the Exchange Act. Rather, Mr. Wey alleges that Defendants lied about *Mr. Wey* violating NASDAQ rules. "There is a critical difference between cases like [*NASDAQ OMX Group, Inc. v UBS Securities, LLC*, 770 F.3d 1010 (2d Cir. 2014), on which Defendants rely] involving allegations that the SRO breached its own internal rules and cases … involving allegations that someone other than the SRO violated the internal rules." *Doscher v. Sea Port Group Securities, LLC*, 832 F.3d 372, 376 (2d Cir. 2016); *see also Manning*, 136 S. Ct. at 1569 (*Gunn-Grable* jurisdiction "necessarily depends on a showing that the *defendant* breached the Exchange Act.") (emphasis added).

Here, as in *Doscher*, Mr. Wey does not allege that NASDAQ violated its rules. He simply alleges that Defendants harmed Mr. Wey by spreading lies—a classic violation of state-law tort duties. Consequently, the complaint does not "necessarily raise" a federal question.

### 2.   The Complaint Does Not Require Interpretation or Application of SEC Regulations

According to Defendants, Mr. Wey's "allegations[,] that The NASDAQ Stock Market failed to promulgate a rule change[,] are subject to SEC review under § 78s(h)(1) and raise questions of federal law arising under 28 U.S.C. § 1331." (NOR ¶ 11). Mr. Wey does not allege a violation of § 78s(h)(1) or its corresponding rule, 17 C.F.R. § 240.19b-4. Rule 19b-4 is referenced in the complaint as background to place Defendants' lies about the non-existent gifting rule into context: NASDAQ cannot unilaterally impose new rules, and NASDAQ did not even *contemplate* adding a "no-gifting" rule. About this, there is no dispute. Rather, Mr. Wey alleges the undisputed *fact* that NASDAQ never sought approval for a "non-gifting" rule, to

bolster his allegation that NASDAQ knowingly lied to the law enforcement officials when it told them Mr. Wey had violated a "gifting" prohibition that never, in fact, existed.

### 3.    The Complaint Does Not Require Scrutiny of NASDAQ's Listing/Delisting Procedures

Defendants assert that "Plaintiffs' theory of the case is inextricably intertwined with the listing of companies on The NASDAQ Stock Market and the exchange's related delisting proceedings." (NOR ¶ 12). Again, NASDAQ's listing/delisting proceedings are mentioned only as background. *See* ¶¶ 74 ("NASDAQ and its listing processes were in the crosshairs of public scrutiny"), 80-94 (recounting the history of NASDAQ's delisting and relisting of CleanTech Innovations, Inc.). Mr. Wey's allegation that NASDAQ delisted a company (a fact that is a matter of public record) does not require the court to interpret or apply federal law.

* * *

Because none of the allegations listed in Defendants Notice of Removal raises a federal issue that is an essential ingredient of Mr. Wey's claims, Defendants cannot establish the first of four essential factors. Thus, the Court need look no further in deciding to remand this case. However, as discussed below, Defendants also fail to establish the other three factors.

### B.    The Complaint Does Not Raise Disputed Issues of Federal Law

The second *Grable-Gunn* factor asks whether the federal issue is "actually disputed." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313-14). Defendants do not address this factor in their Notice of Removal, and thus cannot meet the *Grable-Gunn* test. This is because, as discussed above, the complaint does not raise issues of federal law; it refers to certain rules and regulations in alleging the *facts* of the case. And even those facts (the existence and enforceability of the 300 Round Lot Rule, the non-existence of any prohibition on "gifting"

14

shares, and the requirement that all NASDAQ rules be submitted for public comment) are
undisputed.

### C.      The Complaint Does Not Raise Federal Issues that Are Substantial

The third *Grable-Gunn* factor asks whether the federal issue is "substantial." *Gunn*, 568

U.S. at 258 (citing *Grable*, 545 U.S. at 313-14). "[S]ubstantiality must be determined based on a

careful, case-by-case judgment . . . [and] most federal law questions raised in connection with

state law claims will not be deemed substantial." *NASDAQ OMX Group, Inc. v UBS Securities,*

*LLC*, 770 F.3d 1010, 1028-29 (2d Cir. 2014). "[I]t is not enough that the federal issue be

significant to the particular parties in the immediate suit; that will *always* be true when the state

claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *Gunn*, 568

U.S. at 260 (emphasis and alteration in original). "The substantiality inquiry under *Grable* looks

instead to the importance of the issue to the federal system as a whole." *Id.* Among the principal

considerations are whether the issue is a "pure question of law," whether it will "control many

other cases," and whether "the government has a strong interest in litigating in a federal forum."

*Fracasse v. People's United Bank*, 747 F.3d 141, 145 (2d Cir. 2014) (quoting *MDS (Canada) Inc.*

*v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013)).

Accordingly, courts have typically found a substantial federal issue only in those

exceptional cases that go beyond the application of some federal legal standard to private

litigants' state law claims, and instead implicate broad consequences to the federal system or the

nation as a whole.[7] Even if Mr. Wey's complaint did raise disputed federal "issues", as

---

[7] *See, e.g.*, *Grable*, 545 U.S. at 315 (finding a substantial federal interest in determining the
notice requirements imposed on the IRS-a federal agency-by federal law, and in providing the
"[Federal] Government . . . a federal forum to vindicate its own administrative action"); *Broder*
*v. Cablevision Systems Corp.*, 418 F.3d 187, 195 (2d Cir.2005) (federal issue is substantial if it
"involve[s] ... [a] complex federal regulatory scheme"); *In re Facebook, Inc., IPO Securities and*

Defendants claim, any such issue would be "insubstantial" for purposes of the *Grable-Gunn* analysis. Stated differently, whether Defendants misinterpreted the 300 Round Lot Rule as it applied to Mr. Wey or failed to comply with Rule 19b-4 in connection with the invented "no-gifting" rule would have significance (if at all) only to the litigants *in this case.* Those questions do not implicate broad consequences for the federal system or the nation as a whole.

The Supreme Court's decision in *Gunn* is on point. The state-law legal-malpractice claim at issue in *Gunn* necessarily required application of patent law, creating a "case within a case" in which the patent issue was actually disputed by the parties. *Gunn,* 568 U.S. at 259. The Supreme Court held, however, that "the federal issue in this case is not substantial" in the context of the federal system as a whole. *Id.* at 260. The resolution of the patent "case within a case" would have no effect on "the real-world result of the prior federal patent litigation," and allowing the state court to resolve the underlying patent issue would not undermine the uniform body of patent law because "federal courts are of course not bound by state court case-within-a-case patent rulings." *Id.* at 262.

---

*Derivative Litigation*, 922 F.Supp.2d 475, 482-83 (S.D.N.Y. 2013) (finding a substantial federal interest where "the resolution of Plaintiff's claims concerning NASDAQ's decisions to delay the Facebook IPO . . . implicates the substantial federal question of whether NASDAQ's conduct was consistent with its regulatory responsibilities" "as a national securities exchange," which are imposed by federal law, and where "Plaintiff's claim is . . . a matter of what duties a national securities exchange owes to members of the investing public" at large); *cf. Merrell Dow*, 478 U.S. at 812 ("We think it would . . . flout, or at least undermine, congressional intent to conclude that the federal courts might . . . exercise federal-question jurisdiction and provide remedies for violations of [a] federal statute solely because the violation of the federal statute is said to [create] a 'rebuttable presumption' or [constitute] a 'proximate cause' " for purposes of a state law tort claim.); *Gunn*, 568 U.S. at 263-64 ("There is no doubt that resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in the case. But something more, demonstrating that the question is significant to the federal system as a whole, is needed.").

In *Wolfson v. Ernst*, Judge Koeltl applied *Gunn* in the context of state-law claims for aiding and abetting the filing of a fraudulent copyright action and aiding and abetting a fraud on the court. *See* 112 F. Supp. 3d 167, 171 (S.D.N.Y. 2015). In an underlying litigation, the court determined that the defendant did not have a valid copyright. *Id.* In the follow-up case, the plaintiff alleged that the defendant falsely claimed ownership of the copyright in an affidavit—an "issue that requires an interpretation of the Copyright Act." *Id.* Judge Koeltl remanded, holding that the state-law claims did not raise a substantial federal issue. *Id.* Judge Koeltl explained that "*Gunn* clarified that claims involving 'backward-looking' interpretations of the patent laws do not raise major questions of federal law. The plaintiff's claims only require an interpretation of copyright law in hindsight, and the *Gunn* principle applies equally to claims involving the Copyright Act." *Id.* at 172.

To the extent resolution of a disputed issue federal law is necessary to a determination of whether Defendants' conduct satisfies the elements of malicious prosecution or tortious interference under New York State law, such an analysis would necessarily be "backward-looking" and limited to Mr. Wey's alleged violation of the non-existent "gifting" rule or the 300 Round Lot Rule. Like the patent and copyright issues in *Gunn* and *Wolfson*, Mr. Wey's conduct was already the subject of prior proceedings—a search warrant, a federal indictment, and an SEC complaint. *See* ¶¶ 106-18. Those cases are over. *See* ¶¶ 121-31. Thus, the hypothetical case-within-a-case about whether Mr. Wey violated any NASDAQ rule would have no real-world effect on the outcome of those proceedings or any other in the federal system. As with the fraud claims in *Wolfson*, the primary issue here is simply whether Defendants lied.

D.     **Preventing the State Court from Hearing Mr. Wey's Claims Would
       Disrupt the Federal-State Balance**

The fourth *Grable-Gunn* factor asks whether the federal issue is "capable of resolution in

federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568

U.S. at 258 (citing *Grable*, 545 U.S. at 313-14). In conducting that analysis, courts must "respect

the traditional role of state courts in our federal system." *Manning*, 136 S. Ct. at 1567-68. The

Supreme Court has warned against a "general rule of exercising federal jurisdiction over state

claims resting on federal . . . statutory violations," which would "herald[] a potentially enormous

shift of traditionally state cases into federal courts." *Grable*, 545 U.S. at 319. This prong of the

*Grable-Gunn* test is meant to "justify resort to the experience, solicitude, and hope of uniformity

that a federal forum offers on federal issues." *Id.* at 312.

No such justification exists here. The state courts are possessed of far greater experience

than their federal counterparts in the interpretation and application of state law. Similarly, the

state courts have a greater interest in the outcome of such cases and their implication on the

development of state common law. And, to the extent uniformity is an issue here, it is limited to

uniformity of law within the State of New York since, by design of our federal system, the

elements of malicious prosecution and tortious interference can vary from state to state.

Of considerable relevance to this factor is whether Congress created a federal private

right of action. *Id.* at 318 ("[T]he absence of a federal private right of action [i]s evidence

relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that §

1331 requires.'" (quoting *Merrell Dow*, 478 U.S. at 810)). The Supreme Court repeatedly has

acknowledged that the Exchange Act reflects a congressional intent to have state courts hear

cases "intermingling state and federal questions." *See Manning*, 136 S. Ct. at 1574 ("[I]t is less

troubling for a state court to consider [possible issues of the Exchange Act's meaning] than to

lose all ability to adjudicate a suit raising only state-law causes of action"); *Matsushita*, 516 U.S. at 383 ("Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions.").

Defendants' approach to federal-question jurisdiction invites a "potentially enormous shift of traditionally state cases into federal courts"; it would move all claims against NASDAQ to federal court because any claim against NASDAQ will necessarily raise some issue (as Defendants broadly conceive of them) concerning NASDAQ's authority or obligations under federal law. *Grable*, 545 U.S. at 319. If Congress had wanted the federal courts to have exclusive jurisdiction over lawsuits against NASDAQ, or any other SRO, it would have provided for it. Instead, Congress expressly provided that the rights and remedies provided by the Exchange Act "shall be in addition to any and all other rights and remedies that may exist at law or in equity." 15 U.S.C. § 78bb(a)(2). Put simply, when NASDAQ is sued for claims arising under state law, the state courts can and should retain jurisdiction over those claims.

## CONCLUSION

For the reasons discussed above, the Court should remand this case to state court.

Dated:  New York, New York
        June 15, 2018

Respectfully submitted,

**LUPKIN PLLC**

By:
    Jonathan D. Lupkin (JL-0792)
    Michael B. Smith (MS-3281)

80 Broad Street, Suite 1301
New York, NY 10004
Tel: (646) 367-2771
Fax: (646) 219-4870
jlupkin@lupkinpllc.com
msmith@lupkinpllc.com

*Counsel for Plaintiffs*

20