```
                                        ┌─────────────────────────────┐
                                        │ USDC SDNY                   │
                                        │ DOCUMENT                    │
                                        │ ELECTRONICALLY FILED        │
UNITED STATES DISTRICT COURT            │ DOC #: _____        │
SOUTHERN DISTRICT OF NEW YORK           │ DATE FILED: 03/25/2019      │
------------------------------------ X  └─────────────────────────────┘
BENJAMIN WEY and NYG CAPITAL, LLC,   :

               Plaintiffs,           :

     -against-                       :

NASDAQ, INC., THE NASDAQ STOCK MARKET :
LLC, ADENA FRIEDMAN, ROBERT GREIFELD, :   No. 18 Civ. 3405 (JFK)
MICHAEL SPLINTER, NELSON GRIGGS,     :      OPINION & ORDER
EDWARD KNIGHT, ARNOLD GOLUB, WILLIAM  :
SLATTERY, MICHAEL EMEN, ALAN ROWLAND, :
KEELY MOXLEY, ROBERT McCOOEY JR, and  :
ANDREW HALL,                         :

               Defendants.           :
                                     :
------------------------------------ X
```

APPEARANCES

FOR PLAINTIFFS BENJAMIN WEY AND NYG CAPITAL, LLC
    Jonathan Daniel Lupkin
    LUPKIN PLLC

FOR DEFENDANTS NASDAQ, INC., THE NASDAQ STOCK MARKET LLC, ADENA FRIEDMAN, ROBERT GREIFELD, MICHAEL SPLINTER, NELSON GRIGGS, EDWARD KNIGHT, ARNOLD GOLUB, WILLIAM SLATTERY, MICHAEL EMEN, ALAN ROWLAND, KEELY MOXLEY, ROBERT MCCOOEY JR, AND ANDREW HALL
    Amir C. Tayrani
    Douglas Randall Cox
    GIBSON, DUNN, CRUTCHER, LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Plaintiffs Benjamin Wey ("Wey") and NYG Capital, LLC's ("NYG") (collectively, the "Plaintiffs") motion to remand this case to the New York Supreme Court pursuant to 28 U.S.C. § 1441. For the reasons below, Plaintiffs' motion is granted.

**I. Background**

1

## A. Factual Background

The Court takes the following facts and allegations from the complaint.

Plaintiff Wey is a U.S. citizen residing in New York, New York. (Compl. ¶ 22.) Plaintiff NYG is a limited liability corporation, headquartered in New York, which does business as "New York Global Group." (Id. ¶ 23-24.) Wey is the founder and Chief Executive Officer of NYG. (Id. ¶ 23.)

Defendant NASDAQ, Inc. ("NASDAQ") is a financial services corporation. (Id. ¶ 25.) It owns and operates Defendant NASDAQ Stock Market LLC ("NASDAQ Stock Market"), a New York-based registered national securities exchange, that "operates as an electronic stock market and offers securities listing, trading, and information products and services." (Id. ¶¶ 25-26.) The individually named defendants (collectively, the "Individual Defendants") were, at all relevant times, officers and employees of either NASDAQ, NASDAQ Stock Market, or both. (Id. ¶¶ 29-40.)[1]

Wey, through NYG, provides consulting services to "China-based companies looking to expand in the global capital markets, including via listings on the NASDAQ Stock Market." (Id. ¶¶ 23, 61.) To "identify and facilitate high quality, profitable

---

[1] In the complaint and motion papers, Plaintiffs appear to use the term "NASDAQ" to variously describe NASDAQ, Inc., NASDAQ Stock Market, and the Individual Defendants. The Court has attempted to distinguish the parties where possible.

2

investment and financing opportunities in the international capital markets for Chinese investors," Plaintiffs collaborated with non-party "NYGG Asia"—a China-based entity not owned by Wey. (Id. ¶¶ 42-43.) Wey's clients rely on his introductions to relevant American institutions, his bilingual abilities, his experience in the financial industry, and his relationships "to navigate a vastly different market from that in China, both culturally and financially." (Id. ¶ 62.) "To facilitate his clients' efforts to list on the NASDAQ, Wey and his associates developed and maintained relationships with" several NASDAQ executives. (Id. ¶ 64.) NASDAQ, in turn, benefitted from this relationship as it facilitated NASDAQ's publicly-stated goal of recruiting Chinese companies to its exchange. (Id. ¶¶ 54-60, 65.) Indeed, by early 2011, Wey had been "instrumental" in introducing some of NASDAQ's most prominent China-based listings to the exchange. (Id. ¶ 68.)

In the summer of 2010, the SEC launched an investigation into certain Chinese companies listed on the NASDAQ Stock Market. (Id. ¶ 69.) Some were eventually accused of accounting fraud, as were several major auditing firms "with Chinese subsidiaries who had assisted these companies in the listing process." (Id.) Apparently around the same time, an ABC News investigation of these purported "Chinese scams" estimated that fraudulent listings on NASDAQ had resulted in tens of billions

3

of dollars in losses. (Id. ¶ 70.) Both investigations eroded public confidence in the NASDAQ exchange with many feeling that NASDAQ had not done a sufficiently rigorous job of screening these companies before listing them. (Id. ¶¶ 7, 71-74, 76-77.)

In August 2010, the financial publication Barron's published an article, entitled "Beware This Chinese Import," which discussed certain Chinese companies and the losses American investors had shouldered after purchasing those companies' shares on the NASDAQ exchange. (Id. ¶ 80.) The article took specific aim at Wey, describing him as "one of the most controversial promoters of Chinese takeovers" and implying wrongdoing on his part. (Id. ¶ 81.) According to Plaintiffs, this article was just the excuse NASDAQ needed to make Wey a scapegoat. (Id.) To that end, between 2011 and 2017, the Individual Defendants and other NASDAQ officials made false statements to the SEC, the FBI, and the U.S. Attorney's Office for the Southern District of New York, accusing Wey of fraudulently assisting Chinese companies in maintaining their NASDAQ listings by "circumventing" NASDAQ's listing rule 5505(a)(3), the so-called "300 Round Lot Rule." (Id. ¶¶ 11, 98-99.) Under that rule, companies wishing to list on the NASDAQ exchange must have no fewer than 300 shareholders holding a minimum of a "round lot," a position of 100 shares or more. (Id. ¶ 11.) The Individual Defendants falsely accused Wey of

4

circumventing this rule by "arranging for shareholders to gift their own shares to friends, families, or business associates." (Id. ¶¶ 99.) Additionally, the Individual Defendants, with the exception of Keeley Moxley and Michael Emen, told government officials the following falsehoods intended to destroy NYG: that Wey (1) "devised a conspiracy and scheme to defraud NASDAQ through gifting shares to various" individuals in an attempt to create an appearance of a bona fide shareholder base that satisfied the 300 Round Lot Rule; (2) assisted by others, fraudulently maintained NASDAQ listings by artificially inflating the shareholder base of NYG clients through this stock gifting, creating the illusion that the client met the required shareholder base to satisfy the 300 Round Lot Rule; (3) to mask his efforts, "caused misleading statements to be made regarding the gifting of shares and NYG clients' satisfaction of the 300 Round Lot Rule"; and (4) caused previously gifted shares to be deposited into brokerage accounts to disguise the "beneficial owners of gifted shares." (Id. ¶ 101.) These statements led the FBI to raid Wey's home and office for evidence of his wrongdoing on January 25, 2012. (Id. ¶¶ 106-14.) These raids exposed Wey, NYG, and NYGG Asia "to significant adverse press coverage." (Id. ¶ 115.)

Plaintiffs allege that Defendants' statements were false as (1) there was no rule prohibiting the gifting of shares to meet the 300 Round Lot Rule's requirements, and (2) Wey "never made (or caused others to make) fraudulent representations regarding the gifting of shares to friends, employees, and business associates." (Id. ¶¶ 102-03, 105.)

In September 2015, Wey was indicted and the SEC brought a complaint against him. (Id. ¶¶ 116-17.) Both actions were based on "NASDAQ's fabricated rule violations and outright lies to federal authorities." (Id. ¶ 118.) On June 13, 2017, District Judge Alison Nathan ruled that the FBI's search of Wey's home and office violated the Fourth Amendment and suppressed all evidence the Government seized in those searches. See United States v. Wey, 256 F. Supp. 3d 355 (S.D.N.Y. 2017). Shortly thereafter, both the U.S. Attorney's Office and SEC voluntarily dismissed their actions against Wey. (Id. ¶ 129.) Nevertheless, NASDAQ's more than seven year "smear campaign" left Wey's business in ruins and "destroyed [Plaintiffs'] lucrative relationship" with NYGG Asia. (Id. ¶¶ 43, 130.)

### B. Procedural History

On April 9, 2018, Plaintiffs filed this action in New York State Supreme Court alleging state law claims for malicious prosecution, tortious interference with prospective economic advantage Plaintiffs derived from their relationship with NYGG

6

Asia, and tortious interference with a contract between Plaintiffs and NYGG Asia.

On April 18, 2018, Defendants removed this case to this Court arguing that it has original and exclusive jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa since the complaint alleges violations of rules promulgated under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78 <u>et. seq</u>. On July 27, 2018, Plaintiffs brought this motion to remand this action back to New York state court.

## II. **Legal Standards**

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to a federal district court in the district where that action is pending. 28 U.S.C. § 1331 states that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

"The presences or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987). Where, as here, a complaint only alleges state law claims, federal jurisdiction may still arise "if a federal issue

7

is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013). As the Supreme Court in Gunn derived these factors from its previous holding in Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., they are known as the "Grable factors." Id. (citing 545 U.S. 308, 314 (2005)); see also PCVST Mezzco 4, LLC v. Wachovia Bank Commercial Mortg. Trust 2007-C30, No. 14-cv-6023 (AJN), 2015 WL 153048, at *3 (S.D.N.Y. Jan 12, 2015).

Generally, removal jurisdiction must be "strictly construed," Chu v. Chinese-American Planning Council Home Attendant Program, Inc., 194 F. Supp. 3d 221, 225 (S.D.N.Y. 2016) (quoting Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002)), with any doubts being resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states." Id. (quoting In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007)). Accordingly, a "party seeking removal bears the burden of showing that federal jurisdiction is proper." Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011) (citing Cal. Pub. Emps.' Ret. Sys. V. WorldCom, Inc., 369 F.3d 86, 100 (2d Cir. 2004)). A "single claim over which federal-question jurisdiction exists is sufficient to

8

allow removal." Broder v. Cablevison Sys. Corp., 418 F.3d 187, 194 (2d Cir. 2005).

### III. Discussion

It is undisputed that all three claims in the complaint arise under New York state law. Defendants, who seek removal to federal court, therefore bear the burden of demonstrating that this case meets each of the four Grable factors. PCVST, 2015 WL 153048, at *3 (citing Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006)). As the Court holds that Defendants have failed to demonstrate Plaintiffs' claims meet the first Grable factor, however, it will forego an analysis of the remaining factors.

In determining whether a federal issue is "necessarily raised," the Court must assess whether any "cause of action here necessarily stands or falls based on a particular interpretation or application of federal law." PCVST, 2015 WL 153048, at *4 (quoting Sung ex rel. Lazard Ltd. v. Wasserstein, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006)). In other words, whether the federal issue is an "essential element" of a plaintiff's claim. PCVST, 2015 WL 153048, at *4 (collecting cases).

Here, Defendants makes four arguments for why Plaintiffs' claims necessarily raises a federal issue. First, Defendants assert that all of Plaintiffs' claims are premised on NASDAQ's alleged misinterpretation of its own 300 Round Lot Rule. (Defs.'

Mem. of Law Opposing Pls.' Mot. to Remand at 9, ECF No. 33 (filed July 27, 2018) [hereinafter "Opp."]) As that is an SEC-approved rule, they argue, a misinterpretation and violation of it necessarily raises a federal issue. (Id.) Second, as Plaintiffs claims necessarily require an inquiry into whether NASDAQ satisfactorily performed its duty to enforce and monitor compliance with the Exchange Act, Defendants argue, they necessarily require an inquiry into an area of strong federal interest. (Id. at 10-11.) Third, Defendants allege that each claim "turns on the allegation that [NASDAQ's] interpretation of the 300 Round Lot Rule was incorrect and, consequently, that [NASDAQ] violated [its federal duty to submit rule and interpretation changes to] the SEC." (Id. at 11 (internal quotations omitted).) Finally, they argue, Plaintiffs allegations raise a federal issue concerning NASDAQ's duty to maintain listing standards under the Exchange Act arising out of NASDAQ's listing and delisting of CleanTech. (Id. at 11-12.)

As is evident from the face of the complaint, Plaintiffs have made no allegations that Defendants misinterpreted the 300 Round Lot Rule. Rather, all claims are premised on Plaintiffs' allegations that Defendants invented a rule which prohibits gifting shares to satisfy the 300 Round Lot Rule—a rule against a certain type of circumvention of the 300 Round Lot Rule—and then lied to federal authorities about the existence of that

10

rule and Plaintiffs' violation of it. (See, e.g., Compl. ¶¶ 1 (alleging that NASDAQ deceived federal authorities "by inventing trumped-up NASDAQ listing prohibitions"), 10 (alleging that "the rule prohibition NASDAQ accused Mr. Wey of conspiring to evade did <u>not</u> exist"), 102 (alleging that "the 300 Round Lot Rule contained no prohibition whatsoever regarding gifted shares being included in the minimum shareholder count" and documenting how various Individual Defendants had conceded "that NASDAQ never had a listing rule prohibiting shareholders from gifting their own shares"), 103 ("Simply put, NASDAQ executives fabricated the nonexistent NASDAQ rule violations and lied to federal authorities."), 116 (alleging that the indictment and search warrants were "hinged largely upon NASDAQ's false statements that Mr. Wey deceptively attempted to circumvent the fabricated NASDAQ prohibition on gifted shares being used to satisfy NASDAQ's 300 Round Lot Rule"), 118 (alleging that the indictment and SEC complaint "stemmed from false and misleading information provided by NASDAQ officials – that Mr. Wey engaged in a scheme to evade prohibitions that in fact appeared nowhere in NASDAQ's listing rules"), 130 ("NASDAQ's false narrative regarding Mr. Wey's circumvention of a non-existent NASDAQ rule . . left Mr. Wey's once thriving business in ruins"); <u>see also</u> 134, 149 & 161 (all basing the claims in this case on Defendants' false and misleading statements regarding Wey's

11

"circumvention of the 300 Round Lot Rule" and his "attempts to obscure the circumvention from NASDAQ officials".).) Defendants have made no assertion that such a rule exists. Therefore, there is simply no SEC-approved rule, the interpretation of which could raise a federal issue that could be essential to the Plaintiffs' claim. Accordingly, Defendants' first and third arguments—which are respectively contingent on NASDAQ's misinterpretation of the 300 Round Lot Rule and whether NASDAQ failed to properly seek SEC approval of its interpretation of that rule in violation of the Exchange Act—fail to show that Plaintiffs' claims necessarily raise a federal issue.

Defendants' second argument, that Plaintiffs challenge NASDAQ's performance of its federal duty to enforce and monitor compliance with the Exchange Act, the "Act's implementing rules and regulations, and [NASDAQ's] own rules," also fails. Defendants base this argument on just two cases. (Opp. at 10-11 (citing D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93 (2d Cir. 2001); Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc., 159 F.3d 1209 (1998)).) In both cases, the existence of a federal issue was premised on a self-regulatory organization's ("SRO") violation of its own rules, its failure to enforce and monitor its members' compliance with the Exchange Act, or both. D'Alessio, Inc., 258 F.3d at 103 ("D'Alessio's claims . . . . are premised, in large part, on the

NYSE's failure to enforce and monitor compliance by its members with the Exchange Act and the rules and regulations thereunder, as well as the rules promulgated by the NYSE pursuant to the Exchange Act."); Sparta, 159 F.3d at 1211 ("Sparta sought relief based in part upon NASD's purported violation of its own rules"). Subject matter jurisdiction pursuant to 15 U.S.C. § 78aa in both cases arose from the relevant SRO's duties, under 15 U.S.C. § 78s(g)(1), to enforce its members' compliance with SRO rules, to accurately advise its members with respect to the securities laws and regulations, and to comply with its own rules. D'Alessio, Inc., 258 F.3d at 103; Sparta, 159 F.3d at 1212. Here, in contrast, it is undisputed that Wey is not a NASDAQ member (Compl. ¶ 23.) and there is no allegation on the face of the complaint that NASDAQ failed to comply with its own rules. As such, these cases are distinguishable and, thus, Defendants have failed to establish the existence of a federal duty it had that is necessarily implicated in this case.

Defendants' fourth argument is that Plaintiffs' allegations relating to NASDAQ's listing, delisting, and forced relisting of CleanTech raises a federal issue. Absent from this argument, however, is any allegation that Plaintiffs' claims necessarily raise this issue and, thus, this argument also fails to satisfy the first Grable element.

13

As Defendants have failed to show that Plaintiffs claims necessarily raise a federal issue, they have failed to prove that this Court has jurisdiction. <u>Gunn</u>, 568 U.S. at 258. As such, Plaintiffs' motion to remand to state court must be granted.

## Conclusion

For the reasons stated above, Plaintiffs' motion to remand this case to state court is GRANTED. The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 31 and close this case.

**SO ORDERED.**

Dated:   New York, New York
         March 25, 2019

*John F. Keenan*
John F. Keenan
United States District Judge